# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JENNIFER WALTHORN,

     Plaintiff,               Case No. 26-cv-10887

v.                       Hon. David M. Lawson

LOGISTICS INSIGHT CORP.,
d/b/a UNIVERSAL LOGISTICS
HOLDINGS, INC.,

     Defendant.

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Eric J. Pelton (P40635) |
| Grant M. Vlahopoulos (P85633) | Thomas J. Davis (P78626) |
| HURWITZ LAW PLLC | KIENBAUM HARDY |
| *Attorneys for Plaintiff* | VIVIANO PELTON & FORREST, PL.C. |
| 340 Beakes St. Ste. 125 | *Attorneys for Defendant* |
| Ann Arbor, MI 48104 | 280 N. Old Woodward Ave., Ste. 400 |
| (844) 487-9484 | Birmingham, MI 48009 |
| noah@hurwitzlaw.com | (248) 645-0000 |
| grant@hurwitzlaw.com | epelton@khvpf.com |
| | tdavis@khvpf.com |

## RULE 26(f) JOINT DISCOVERY PLAN

Plaintiff JENNIFER WALTHORN ("Plaintiff") and Defendant LOGISTICS

INSIGHT CORP., d/b/a UNIVERSAL LOGISTICS HOLDINGS, INC.

("Defendant") through their respective counsel of record, submit this Joint

Discovery Plan.  Appearing for the parties as counsel will be Grant M. Vlahopoulos

for Plaintiff and Eric J. Pelton and Thomas J. Davis for Defendant.

    **1)**    **Related Case:** This case is not related to any other pending civil case.

**2)** **Jurisdiction:** This Court has jurisdiction over this proceeding pursuant to 42 U.S.C. § 2000e-5 (Title VII of the Civil Rights Act), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).  Venue in this Court is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to this Complaint occurred within this judicial district in Ypsilanti, Washtenaw County, Michigan.

**3)** **Plaintiff's and Defendant's Summary of Factual and Legal Issues:** Counsel drafted the following summaries of their respective positions and the principal factual and legal issues.  The signatures on this document are not admission to the validity of any claim or defense set forth, do not constitute a waiver of any claims or defenses in the pleadings, and do not indicate agreement with any of the facts or legal issues presented.

**Plaintiff:** Within only a few months of her employment, Plaintiff began experiencing pervasive harassment from male drivers based on her sex.  Male drivers routinely told Plaintiff to "fuck off" and called her a "bitch" when she enforced safety protocols or provided instructions.  These male drivers would routinely ignore Plaintiff's instruction and directions because of her sex.  At least one drive explicitly stated that Plaintiff, as a woman, had no right to speak to him.  The harassment would only cease when Plaintiff's male colleagues intervened on her behalf.  Male drivers who refused to comply with Plaintiff's instructions would immediately comply when given the same instructions by her male colleagues.  On or about December 1, 2023, Plaintiff sent her first formal written complaint to her manager, Mr. Ciak, via text message.  Despite Mr. Ciak's explicit promise to work with Human Resources to create a safe environment for Plaintiff, Defendant took no action whatsoever to prevent or remedy the harassment.  No one from Human Resources or management ever followed up with Plaintiff.  Plaintiff felt she could no longer safely report

harassment or safety concerns.  Defendant failed to protect her or take any corrective action against the harassers.

Over the following months, Plaintiff's work environment continued to deteriorate.  On or about May 30, 2025, approximately one week after Plaintiff reported being sexually assaulted, the same driver who had assaulted her returned to the facility.  Rather than protecting Plaintiff from her assailant, Defendant's response was to: (a) require Plaintiff to hide; (b) reprimand her for seeking help; and (c) justify the assault by suggesting the driver "just took a liking" to Plaintiff.  Defendant allowed Plaintiff's assailant to continue working at the facility with unrestricted access to Plaintiff.

After nearly two years of enduring harassment, Plaintiff finally broke down. On June 18, 2025, she called Mr. Ciak while crying and explained that the ongoing harassment had to stop, and she did not feel safe continuing work that evening.  She asked Mr. Ciak if she could go home to regroup.  Mr. Ciak gave Plaintiff permission to leave work and agreed.  Plaintiff explicitly told Mr. Ciak that she would return to work the next day.

On the morning of June 19, 2025, at 8:38 AM, Plaintiff received a call from Defendant's Human Resources representative, Jasmine Horton.  Plaintiff provided a detailed account of the harassment, disparate treatment, and sexual assault she had endured. Ms. Horton showed no interest in investigation Plaintiff's reports of sexual assault or harassment.  Her sole concern was whether Plaintiff had recorded her phone call with Mr. Ciak.  At 12:06 PM—less than four hours after Plaintiff spoke with Ms. Horton—Plaintiff received a phone call from Mr. Ciak and Operations Manager Rhonda Kozma.  Mr. Ciak stated that HR had decided to terminate her. After termination, Plaintiff learned through Michigan Unemployment Insurance Agency proceedings that Defendant's stated reason for termination was "job abandonment" based on allegedly leaving the facility on June 18, 2025, without permission.

**Defendant:** Defendant denies that it discriminated or retaliated against

Plaintiff. It also denies Plaintiff was sexually harassed and that Defendant was not

appropriately responsive to her complaints.

3

Plaintiff was hired as a switcher at the General Motors facility located in Ypsilanti by the very same people she claims had a discriminatory animus against females. As a switcher, Plaintiff's job duty was to pull trailers left by tractor trailer drivers of various trucking companies engaged by General Motors and haul its freight. She would move the trailers from one location to another on the property, such as a loading or unloading dock or to simply park the trailer until it was again needed by the driver. It was specifically not her job to engage with drivers, to get out of her truck to confront drivers, or to attempt to address safety issues on her own. Rather, she was required to report safety issues to the General Motors contractor that managed its freight, RXO. Plaintiff's various troubles with drivers resulted from her ignoring company policies and repeated warnings by management and the facility lead not to engage the drivers or tell them what to do. She repeatedly failed to report issues to RXO and, instead, took matters into her own hands. Some drivers did not react well to her instructions.

The one specific incident of alleged inappropriate touching/sexual assault by a driver was investigated. Video surveillance of the area showed no touching occurred and Plaintiff could not offer other witnesses or evidence. Plaintiff's complaints about male drivers were not good faith complaints.

Regardless of the foregoing issues, Plaintiff's employment was terminated after she abandoned her job in the middle of a shift on June 18, 2025.

4

**4)** **Amendment of Pleadings:** Plaintiff anticipates amending the Complaint to remove Universal Logistics Holdings, Inc. as the d/b/a for Defendant Logistics Insight Corp.

**5)** **Discovery.**

    **a.** **Initial Disclosures:**

        i. Initial disclosures pursuant to FED. R. CIV. P. 26(a)(1) shall be exchanged and served by August 7, 2026.

    **b.** **Subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to particular issues:**

Discovery will be needed on issues of liability, defenses, and damages. The parties propose that discovery be completed within eight (8) months of the issuance of the scheduling order, or by March 24, 2027. The Parties believe the issues for discovery are adequately framed by Plaintiff's Complaint and Defendant's Answer and Affirmative Defenses. Plaintiff anticipates deposing decision-makers. Defendant anticipates deposing Plaintiff, healthcare treaters that may be relevant to Plaintiff's claimed damages, any experts identified by Plaintiff, and other witness Plaintiff may assert support her claims. The attorneys will evaluate the need for additional depositions after the initial depositions have been taken. At this time, the

parties do not expect that expert testimony will be necessary.  However, to the extent any party intends to use an expert in this case, the parties agree to the following:

a.      Any expert witness whose testimony relates to liability that a party may call at trial, or utilize in a dispositive motion or response to a dispositive motion, must be disclosed no later than ninety (90) days before the close of discovery, and the expert must also provide the opposing party with a written report that contains the information required under Fed. R. Civ. P. 26(a)(2)(B) by the same deadline. The opposing party would then have forty-five (45) days to submit a report.

b.      Any expert witness whose testimony relates to damages only that Plaintiff may call at trial must be disclosed on a supplemental witness list filed by Plaintiff within thirty (30) days after the Court's ruling on any dispositive motion or, in the absence of such a motion, no later than ninety (90) days before trial. The expert must also provide Defendant with a written report that contains the information required under Fed. R. Civ. P. 26(a)(2)(B) by the same deadline.

c.      Any expert witness whose testimony relates to damages only that Defendant may call at trial must be disclosed on a supplemental witness list filed by Defendant within forty-five (45) days after receipt of Plaintiff's damages expert's report.  The Defendant's expert(s) must also provide Plaintiff with a written report that contains the information required under Fed. R. Civ. P. 26(a)(2)(B) by the same deadline.

d.      Once a listed expert witness has provided his/her written report, either party may notice the expert's deposition for a date, time, and location to be agreed upon by the parties, but any such deposition must be completed no later than fourteen (14) days before trial.

e.      Fed. R. Civ. P. 37(c)(1) shall apply to a party's failure to list an expert witness.

**6)**     **Limitations on Discovery:** At the present time, the Parties do not foresee any need to modify the limitations on discovery or the discovery

requirements set forth by the Federal Rules of Civil Procedure, including the number of depositions, the length of any such depositions, or the number of interrogatories.

7)    **Electronic Discovery:** The parties have discussed the production of electronically stored information (ESI) and suggest that such information be handled as follows: The parties agree that electronic information shall be produced in a format that is compatible with common software such as Microsoft Word, Excel, and Adobe.  Alternatively, electronic data may be produced in a hard copy format such that the paper copy does not result in loss of data.  If discovery of ESI becomes more complex than currently anticipated, the parties shall craft a method for obtaining ESI in a manner that promotes transparency and efficiency while reducing the expense for any party.  The parties also reserve the right to request production of ESI in its original or native format subject to the parties' rights and obligations under the Federal Rules of Civil Procedure.

8)    **Discovery Disputes:** The parties have no outstanding or anticipated discovery disputes as this time.

9)    **Assertions of Privilege/Work-Product.** The parties anticipate submitting for the Court's approval a Proposed Stipulated Protective Order regarding the discovery of confidential information that complies with the Court's Practice Guidelines for protective orders. The parties agree that the Court should

enter an order under Federal Rule of Evidence 502(d) regarding privileged material and will include such language in the proposed protective order.

10)    **Insurance:** Defendant has not identified any insurance available to satisfy part or all of a judgment, including indemnification agreements.

11)    **Settlement:** The parties are amenable to an early settlement conference with the Magistrate Judge.

12)    **Consent:** The parties do not agree to having a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and to order the entry of final judgment.

13)    **Trial:** This case is to be tried before a jury.

Respectfully submitted:

<table>
<tr>
<td>/s/ Grant M. Vlahopoulos<br>Grant M. Vlahopoulos (P85633)<br>HURWITZ LAW PLLC<br>*Attorney for Plaintiff*<br>grant@hurwtizlaw.com</td>
<td>*/s/ Eric J. Pelton (w/Consent)*<br>Eric J. Pelton (P40635)<br>Thomas J. Davis (P78626)<br>KIENBAUM HARDY<br>VIVIANO PELTON & FORREST, P.L.C.<br>*Attorneys for Defendant*<br>epelton@khvpf.com<br>tdavis@khvpf.com</td>
</tr>
</table>

4923-6763-5389, v. 2

8